Madam Clerk, would you announce our calendar for this afternoon? Yes, Your Honor. The following case is scheduled for oral argument this afternoon, Tuesday, January 14, 2025. Case number 23-3051 and case number 23-3094, both from the District of Western Missouri, Cedar Hills Investment v. Battlefield Mall. Very good, well good afternoon everyone, counsel, we're ready to hear argument in this case and the attorney for the appellant, Mr. Schnecke, you may proceed. Thank you, Your Honor, may I please report? My name is Rick Schnecke, I practice law down in Springfield, Missouri, and I represent the appellant and cross appellee, Cedar Hills, in this case. Cedar Hills owns the real estate that lies beneath the original part of the Battlefield Mall in Springfield. If you've ever been to Springfield, you may be familiar with it, but the original part of the mall sits north and south and fronts on Glenstone Avenue, which is a major north-south thoroughfare in Springfield. Sometime after that was built, a new part of the mall that extends to the west was built, so the whole building looks like a T. My client owns the part that's under the north-south original part, which includes 78% of the leaseable area in the mall. So you've seen in the briefs a reference to 78%, that's where that comes from, because Battlefield Mall LLC, and before that its predecessor, Simon, owns the rest of that, the other 22%, the part that goes west. In any event, we're here because the district court, I think, erred in its calculation of damages with respect to whether Battlefield Mall has the right to deduct certain items from gross rent, and for a couple of other reasons related to what the court allowed us to deduct or not deduct, or allowed Simon Battlefield Mall to deduct or not deduct. The way the lease works, it's a little complicated, but when you read through it and you think about it, it becomes pretty simple, and that is that my client gets a base rent that's not in dispute, a monthly base rent, and then at the end of the year they calculate a percentage rent based on 20% of Battlefield Mall's rent from the sub-tenants, the mall tenants, in excess of $3.7 million. Now, I keep wanting to say Simon, excuse me, but it's Battlefield Mall LLC. Battlefield Mall has the right to exclude certain items from that gross rent, and that's the major bone of contention in this case. The lease specifically provides in section 2.02c that gross rent shall not include certain reimbursements that Battlefield Mall receives from the tenants. Number one is common area maintenance, it goes on to say taxes, insurance, sprinkler, utilities, heating, ventilating, air conditioning, merchants association, and promotional funds, which are advertising funds. To the extent that each such charge is separately stated, and the reason for the separately citing how much of that gets deducted from gross rent, Battlefield Mall is entitled to deduct the lesser of either the reimbursement that it receives from the tenants or 78% of its cost. There's that 78% figure that I mentioned before, and you have to run that calculation with respect to each of these items, lesser of reimbursement or 78% of the cost, to get down to the bottom line number that Battlefield Mall is entitled to deduct from gross rent before it pays the percentage rent at the end of the year to my client. At some point during this lease, Battlefield Mall went from a pro rata CAM charge, common area maintenance charge, to its sub-tenants, to basically a fixed CAM charge, and there are lots of good reasons to do that, administratively from their standpoint. Number one, it's a one figure, they don't have to figure a lot of stuff. Number two, their tenants, the sub-tenants in the mall, can budget because they know at the end of the year what that's going to be, and like I said, you don't have to do a bunch of calculations to get there, but that's not what this ground lease requires. So they can do with their tenants whatever they want to do. From our standpoint, they still have to comply with the terms of our ground lease. The ground lease says that those items that they want to deduct have to be separately stated. Now it doesn't say whether they have to be separately stated to the tenants or they have to be itemized to us, but either way they have to be separately stated, and the reason is because my client, Mr. McClarnon, said, once you throw all that together, it's like trying to unscramble an egg. You don't know, you can't figure out how much of that is the actual reimbursement that Battlefield Mall received. You can't figure out how much is 78% of the cost. We have some figures that are in the record, I'm not convinced that we have figures for all of that for each year, for all of these things. But Battlefield Mall started packing a bunch of stuff into common area maintenance that really isn't maintenance. They put capital expenditures in there. The district court correctly found, and I know they disagree with me on this, but the district court correctly found that capital expenditures are not maintenance. They included administrative costs for employees at the mall and employees at their home office, I think it's in Indiana someplace. Capital expenditures included those? Pardon me, Judge? The capital expenditures included those? They put capital expenditures under the ambit of common area maintenance. The district court found... No, but administrative costs were under... I also didn't understand, those two different things, I didn't understand. Two different things, yes, Judge. Okay, I didn't get to the transition. I'm sorry. I was just saying they were packing a bunch of different things into what they called common area maintenance. I understand that part, yeah. I just want to make sure we're getting these separated in my mind. Right. So the capital expenditures were one thing, administration expenses were another, they also put security in there, and there are other things that we aren't arguing about on appeal, but those are the three things we're arguing about. In any event, the district court... Who is the separately stated requirement, who's the beneficiary of that? Why was that phrase there? It's there so that my client can know and figure out when it audits whether the items that were deducted were properly deducted from gross rent. Because we don't know what all is in a flat CAM charge. We know that what the district court found, they've got several things that are in that flat CAM charge, but we're concerned with the deduction of the things that are specifically stated in paragraph 2.02c of the lease. Well, but isn't that information and the necessary breakdown, isn't that covered by other provisions of the lease? I don't think so, Judge. Specifically section 2.02d and e? I think those are the provisions that's got some pretty detailed kind of accounting kinds of requirements. Right. And those piggyback on 2.02c, which contains what the district court found to be the condition precedent for deducting those in the first place, which is the separately stated requirement. And Judge, to go back to your other question, that was a specifically negotiated term. And if you look at plaintiff's exhibit 19, I think it's on page 1347, if my memory serves me correctly, of the appendix, one of the drafts of the lease that has the handwritten changes that got down to this specifically stated language that's in the lease now is in evidence. That was specifically negotiated at my client's request. It was put in 1983, I believe it was, 82 or 83, it was not in the original, excuse me, maybe 93. It was not in the original lease. When they redid the lease, it was specifically negotiated. And so my client testified and the district court found that that's necessary to be able to know what you're able to deduct or not deduct. In fact, the district found that, let me find my note on it, without the specifically stated amounts that they wanted to deduct, Cedar Hills lost the ability to verify whether reimbursements battlefield treated as excluded items were in fact intended to be excluded from the gross rent. And the fixed operating charge, quote, does not provide any information about what is encompassed by the fixed charge or whether the fixed charge has any relationship to battlefield's actual cost in providing the service. It's on page 19 of the addendum, paragraph 20. So is it the position of your client that if that's true, if the separately stated requirement was breached, then Battlefield Mall would not be entitled to any deduction? For those specific items, that's correct. The ones that are set out in 2.02c. And that's the point of the national alfalfa case that I cited to you. From the Missouri Court of Appeals in Kansas City, the 1968 case, it involved early termination of a lease and conditions precedent necessarily to terminate the lease early. One of them was that you could terminate it any time, I think it was after March 31st of 1966, well, and then you had to give six months notice of that, you had to pay the tenant up to the termination date, and the tenant tried to terminate it in 1965. The court said you didn't properly terminate it because they wanted to terminate it as of February 1st of 1966, but in fact, the lease provided for termination after March 31st of 1966. They didn't properly exercise their right to terminate the lease, and they didn't pay the rent up to that time. And under that case, it said that the tenant was responsible for all of that rent, for the entire amount of the lease because it wasn't properly terminated, up to the point where the tenant, the landlord covered its damages by leasing to somebody else. And our point, Judge, is that if these are conditions precedent, which I think the district court correctly found, the separately stated requirement is a condition precedent to excluding these particular items from gross rent. How are the damages calculated? Well, the damages, Judge, would be calculated, our experts, the damages are calculated on the gross rent without those deductions. No, so you exclude all of those, the ones that were not separately stated? Yeah, you would not get to deduct those from gross rent. What does the district court hold? And then you pay 20% of the gross rent amount that exceeds $3.7 million for the year. What did the district court hold with respect to that measure of damages? District court didn't give us anything for that. The district judge said he was doing that, but what he gave us was damages under counts three and four that relate to capital expenditures and certain administrative costs and security. He didn't give us security, he gave us certain administrative costs and not all of those. I have the impression that the district court may have miscalculated the damages caused by the failure to charge us separately. I think so, Judge. Because it equated them with the increase in percentage rent Cedar Hills would have received. Well, that's what the damages, I think, would be, Judge. Well, but under the party's lease, the charge for a qualifying expense, I believe, is excludable from the gross rent to the extent that the charge is separately stated. Is that right? Right. And they didn't separately state them. So wouldn't the price for failing to separately state is inclusion of the entire charge in gross rent? Isn't that right? That's right. But that's different from what the district court said. Well, the district court said the damages under the failure to separately exclude were the damages for including capital expenditures and common area maintenance, the damages for including certain administration costs under common area maintenance, but capital expenditures and those administration costs are not even in the lottery list of things that have to be separately stated. So the district court looked at those things and said, oh, that's your damages for failure to separately state. But they have no obligation to separately state capital expenditures. They have no obligation to separately state those administration expenses. We don't think they were properly excluded from gross rent because they tucked them under common area maintenance when they are not maintenance.  But here's the real question that I'm struggling with. If we look at it and if we were to agree with you on your argument and we'd have those capital and maintenance charges, they were under the ground lease, were not properly deductible or excludable, I guess is the word we're using. And so the question is, when you fail your itemize, do you lose your right to make the claims for the things that would have been properly excludable or would the district judge say, go back, separately state them, tell us what they are so they can be analyzed and the measure of damages would be what they excluded that was not properly excludable. Does that make any sense or are you completely lost by my bizarre question? No, I think I understand what you're saying, Judge. Let me see if I can answer it the way I understand it and if I don't answer it right, you can ask it again. The district court gave us damages for excluding capital expenditures, calling it common area maintenance, but capital expenditures aren't maintenance, gave us damages for certain administration costs for their overall allocated nationwide costs, didn't give us the administrative expenses for the people in Springfield, even though they don't do the maintenance, they hire somebody else to do the maintenance, gave us those two things. Now that's part, I think, of this overall ambit of how much rent we get if nothing is excluded. And so, and I have a footnote in the brief that says that if you send this back for recalculation and my footnote is in connection with the prejudgment interest, you don't want to have double recovery, we're not asking for that. And so I think you have to sort that out if, just take an easy number, our expert says that the failure to separately state, and this number wasn't challenged at trial, the failure to separately state results in damages of $9,134,839. So let's just say $9 million. Now the district court gave us certain things for the capital expenditures, gave us $3 million for the capital expenditures, gave us, where's my note here, not a whole lot, $295,000 for the administration costs, did not give us the other $1.5 million for the administration costs. If we get the whole ball of wax in terms of the rent because nothing gets excluded, then sticking capital expenditures in there and taking that off, I'm not convinced, and I think this is what you're asking, I don't know that that would not be a double recovery. Because, and I want to think this through, but if they're deducting certain things, we're getting damages for that, when under the ground lease we get 20% of their rent in excess of $3.7 million, whether they've taken it off as this or taken it off as that, we still get the 20%. And so then you have to look at counts 3 and 4 to make sure there's no double recovery. Does that answer your question? It actually does. Okay. That's what I'm trying to say. I see my time has completely gone for rebuttal too. I don't know if I get any time left for answering questions or not. If I do, I'll see you. If not, I ask you to reverse this in accordance with what my brief says. Thank you. Thank you, counsel. Mr. Bennett. Thank you, your honor, and may it please the court. I'll try to start off with answering a few of the questions that came up, and Judge Shepard, you asked a question about what is it that has to be separately stated. And what has to be separately stated is clear in 2.02c, which is the charges paid by the mall tenants. And that's a quote. It's from appendix 423. And so what 2.02c is getting at is not this verification concept, but rather that you can't blend your rent and your cost recovery charges to the mall tenants. You have to separate out. So separately stated from what? It's separately stated from rent and the taxes. And it is what we charged. And so when we entered leases during the time period of issue, the leases says you're going to pay us rent, and you're going to pay an operating charge, you're going to pay taxes. And it does, in fact, separately state exactly the amount of the operating charge for every tenant. There is no requirement in 2.02c that we list out each line item of expenses to operate the mall. In fact, it's recognized that we think in the text of the contract that multiple expense items can be included within a single operating charge line item because it talks about how utility can be a component of the common area charge. And it talks about how you have a charge, each such charge. And that applies to the supplying of services, plural. So there is not a breach of the provision that we separately state something because what we have to separately state is what we charge the tenant. Well, counsel, in your view, under that provision, 2.02c, does it require that taxes, for example, be separately stated? And insurance would be separately stated? Utilities separately stated? No, I think that if it is, the way we were presenting it was a common area maintenance fund, but we did have separate items for the taxes in the invoices that we sent to the person. So what is that provision? What's the requirement of the provision? Is it a requirement that each of those things that are listed above be separately stated? In the sense that each one is a charge? Anything that we charge the client for has to be separately stated because what they are trying to get away from is the concept that we could somehow say, you owe us $100 for everything for this month. And then that pays for their taxes, that pays for their maintenance, and that pays for their rent. And then we would say to our landlord, oh, we got $100, but 50% of that is expenses and so you don't get your share of that. So the purpose of it is to say whatever we separately charge to the tenant, we break that out. And then if we do separately break out a maintenance charge, then we can recover that or we can exclude a portion of that. But what matters is what is in our lease to the tenant, not what goes into it. It can be an umbrella charge. But the purpose of 2.02c is to be clear that we can't, after the fact, collect a big lump sum and then try to say, oh, X% of that went to expenses. We need to separately break out our expense charge. So from that, I gather your contention would be that that provision is primarily for the benefit of these tenants. It's for the tenants and it definitely is an obligation towards the tenants. That's the whole point of it. It says charges paid by the tenant. That's the sub-tenant, not us as tenant under the ground lease. But that's the whole point of that. And the verification is just what you said earlier, which is we have a requirement that we certify this. Then we have a requirement that the auditing firm can come in and look at it. And then we have an availability for them to audit where they can go through and look at every single thing and think, oh, well, this should be included, shouldn't be included. You overstated it. It might have been understated. 2.02c is not the verification provision. That's clearly in D, E, and F, which are right after it. 2.02c is designed to say, if you want to charge for your operating expenses, you need to separately bill your tenants for that so we know exactly what they paid for the operating expenses. That's all that that does. And there's no requirement that we break this out in any way. Obviously this is how that's been going for a long time, including before the 19. You know, we had been doing a lot of these activities as common area maintenance for many years, and putting it into this operating charge approach was, as counsel stated, received very well by the tenants because they got a single charge, didn't require a true-up at the end of the year, but worked out very well for them and for us, too, because it set a flat fee that if we came in under that, actually the mall made money on the operating charge, and they got their 20% of that, and we got our share of that, and it worked great for many years. So there's nothing in this that says we can't do it exactly like that because the charges paid by the tenants for maintenance was separately stated. Well, counsel, I wanted to ask you one other question, then I'll be through, I think. I thought I understood counsel to say that this separately stated, such charge as separately stated language was carefully negotiated between Cedar Hills and Battlefield Mall when this lease was entered into, and that there's some things in the record that show that, and show and indicate the purpose of it. No. The testimony that you're looking for that they try to rely on is from their principal. It's found at volume two, pages 172 to 175 of the transcript. The only testimony was the lawyers handled the negotiations, they did all the drafting, that the principal offered no specific comments as to what language the lease should be, that he did not recall much about the negotiations, but thinks he was informed of what the parties wanted to put in, and may have approved it or had comments on, and he testified in his sworn deposition testimony that he assumed it had been negotiated, but that it was thirty years ago, and he had no specific recollection. So, I think what's happening is, in the context of a dispute that's happening twenty-something years later, some intentionality or negotiation is being surmised from the text of it, consistent with their position, but I don't believe that the record will support that proposition. What is our standard of review here? It's an interesting question, and one I've been thinking a lot about, getting ready for today. So, what I view it as, there is legal questions of what does the contract mean, what does common area maintenance, or substantially similar, mean, what does the charges paid by the tenant, I view those as legal questions. Now, the meaning of the contract is a judge question in this context. It is, for sure, and then also, there's not disputed facts, because it would be a fact question like a jury trial on a breach of contract, if perhaps we didn't actually incur the expense that we said we incurred, there's no claim like that. Everybody knows what the charges were for, and so there's no disputed facts to be decided, so we view the standard of review for all the issues as de novo. If you accept our contract interpretation, then the disputed items fall within the excluded items, and therefore, that portion would be reversed. Well, but if it's de novo rather than clear error? Yeah, because it's not like the judge went in and said, I'm making a finding that you didn't actually do the CAPEX to fix that fence. It's all just a question of what the contract terms mean, because then, because the facts are undisputed about what we did, like the disputed charge, for example, we fixed a concrete sidewalk, and we put it as CAPEX in the accounting system. So it's not like there's disputes about any of that. It's all just a question of what the contract means, and so it's de novo. Judge Erickson, to your question, what the judge did is apply a classic Missouri benefit of the bargain approach to contractual damages, saying, okay, I found that there was a breach, which we, of course, don't agree with, but I found that there was a breach, so what would your position be in if there hadn't been a breach, and then he did a very straightforward analysis to say the stuff that was properly excluded is properly excluded, didn't harm you any, and the items that shouldn't have been excluded, he did a calculation, and we had such detailed records that these numbers he's taking straight from the experts. So he did a benefit of the bargain analysis, which is the proper measure of damage. This provision is not a condition precedent under any normal view of contract law. Conditions precedent are items that have to happen before the contract is effective, and this is just a claim of a breach of a contractual provision, and the lease case, for example, goes to that whole benefit of the bargain idea, because what the landlord bargained for there was, if you're going to terminate, you have to go through these certain steps, and when they didn't go through those certain steps, he still got the benefit of his bargain, which is you're going to be paying rent on it. There's no idea that somehow the law says that you can have a windfall, because what they're asking you to do in terms of reversing those portions of the judge's ruling that they're asking him to do is give them money for things that are indisputably things that should be excluded from rent, and have them recover things that they would never have gotten, even though this change from pro rata charging to fixed charging already made them more money than they claim to have even lost on the disputed items. So you can't have a windfall under the law of damages. It's the benefit of the bargain approach. I'd like to talk about the two categories that we think are very important, where we think things should be reversed. I think you understand, or I view it as fundamentally the role of the court to determine what the parties intended at the time that they entered their agreement. So let's talk about what they're talking about with CapEx, which was not allowed to be excluded. We're not talking about capital expenditures like we might understand them, where you build a parking garage or you build a structure. It is an undisputed fact that what we're talking about is that the capital expenditures were things that were done to repair the existing situation at the mall. One of them was to repair a fence. Another one of them was to repair a sidewalk. Another was to do landscaping. And so all of that is maintaining the common area of the mall and what everyone who was sitting down to negotiate this in 93 would think this is what we're supposed to do and it's expensive running the mall. We are not trying to charge them for something that was an improvement in the sense of building something that wasn't there. It's fixing what was already there. And it just happened to be that what we did meant it might extend the useful life by a year and so it was capital. But it was actually maintaining what was already there. Didn't the battlefield just charge for capital expenditures only when it spent on common areas? Yes. Yes, only on common areas. When we did tenant work or other things like that, we would not try to deduct that from the rent under this provision. So common areas would be like the sidewalk outside. I understand what they are, but there wouldn't be other capital expenditures. Tenant build outs of tenant space, you know, when you sign a lease like this, you'll agree that we can build things to make the store look like you want it to look like, things like that. And also, you know, obviously we constructed a whole second section of the mall some number of years ago. So there are capital expenditures that don't go to the common areas. Did you charge for those? No. There's no claim that we charged them through this. I want to make sure. Yeah. For sure.  And then the administrative expenses is another great example. I mean, if you take what the district court does here, just to make sure we're clear, so let's do CapEx first. He says that if we had a broken fence or a bad sidewalk, if we went out there and put a Band-Aid on it and patchworked it, spent under $5,000 and didn't fix it, we could do that year after year after year after year and exclude it from rent. If we went out instead and spent $5,000 and did it right in one year and never had to go back for successive years, under the district court's approach, somehow we get tagged with 100% of that. I don't think people negotiating this lease would think that that's the incentives that we want to create because for these expenses, all we're doing is it becomes capital just because it was $5,000 or $25,000 for certain things and with the administrative expenses, it makes total sense to do those with specialists who deal with it all the time as opposed to us hiring a manager who would then spend all their time doing procurement and things like that. All it would do is cost us money and cost both sides money. So we would ask that the court rule as indicated in our brief, which is we didn't breach the separately stated requirement and that the CapEx and off-site admin was properly excluded. Thank you. All right. All right. Counsel, I believe you're out of time, but we took some of your time with questions. If you can wrap up in a minute, I'll permit you to do so. Thank you, Your Honor. I want to read to you from the stipulation of fact. The parties agreed that in determining the amount of excluded items to be excluded from gross rent, that's section 2.02C of the lease, Battlefield would exclude the lesser of its actual recovery for an excluded item or 78% of the total mall-wide cost of providing the excluded item. It didn't say it could exclude the whole lump sum like they want to do. You have to do it for each item. That's in the stipulation. Now they want to take a different approach and say, well, we can lump it all together. You can't do that. That's not what the lease provides. The reason for this provision is, Judge Shepard, to go back to your question, look at Exhibit 19. It's that handwritten exhibit. It's typed with handwritten changes that show that this was a specifically negotiated thing. You can see why. Again, thank you for your consideration. Give me another minute. I ask you to reverse it. Thank you. All right. Thank you, Counsel. The case has been well argued and it is submitted and we'll render a decision in due course.